## <u>CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE</u>

This Confidential Settlement Agreement and Release (this "Agreement") is entered into by and between Steffi Fiallos (hereinafter "Fiallos"), Juan Bedoya (hereinafter "Bedoya"), Tamara Chin (hereinafter "Chin"), Shalan Blair (hereinafter "Blair"), Roslyn Achmad (hereinafter "Achmad"), Rachel Panosian (hereinafter "Panosian"), Leonardo Laina (hereinafter "Laina"), Nathalie Vachon (hereinafter "Vachon"), and Susan Dash (hereinafter "Dash") (collectively, "Plaintiffs") and Dr. G's Urgent Care LLC (hereinafter "Dr. G's") and Mylissa Graber (hereinafter "Graber") (collectively, "Defendants"). Plaintiffs and Defendants are collectively referred to herein as the "Parties."

## <u>RECITALS</u>

**WHEREAS**, Plaintiffs filed a lawsuit in the United States District Court for the Southern District of Florida on March 20, 2024, styled Steffi Fiallos, Juan Bedoya, Tamara Chin, Shalan Blair, Roslyn Achmad, Rachel Panosian, Leonardo Laina, Nathalie Vachon and Susan Dash v. Dr. G's Urgent Care LLC and Mylissa Graber (Case No. 23-10014-DPG), alleging violations of the wage and overtime provisions of the Fair Labor Standards Act (the "FLSA"), Florida common law, and alleging breach of contract (the "Action");

**WHEREAS**, the Parties entered into good faith settlement negotiations resulting in this Agreement. The purpose of this Agreement is to settle and compromise any and all prior and existing bona fide disputes, claims and controversies between the Parties without any future cost and expense of litigation, and to bar any and all future disputes, claims and controversies between the Parties which may arise out of any facts or events, known or unknown, that have occurred up to the Effective Date of this Agreement;

**WHEREAS**, the Parties recognize that due to the nature of the working relationships between Plaintiffs and Defendants, there is a reasonably high likelihood that a jury may have found that the Plaintiffs were correctly categorized as independent contractors or that due to the level of Plaintiffs' training, skill, and responsibilities that they would have been exempt from overtime; accordingly, the Parties have agreed that the appropriate remedy to this dispute is based in contract law;

**WHEREAS**, subject to the terms of this Agreement, the Parties now desire to fully and finally settle all of Plaintiffs' claims;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions:

1) <u>Recitals</u>. The Recitals set forth above are incorporated fully herein, are true and correct and form a material part of this Agreement.

2) <u>No Admission of Liability</u>. Plaintiffs agree and acknowledge that this Agreement is not and shall not be construed as an admission by Defendants, or any person or entity acting on their behalf, of any liability or of any act or wrongdoing whatsoever, including without

limitation, any violation of: (1) any federal, state, or local law, statute, regulation, code, or ordinance; or (2) of any legal, common law, or equitable duty owed to any entity, regulatory authority, or individual.  The Parties are entering this Agreement merely to avoid the costs and inconvenience associated with potential litigation of this matter.

3) <u>Settlement Terms and Dismissal</u>. Defendants shall pay Plaintiffs the total sum of One Hundred and Eighteen Thousand Dollars and Zero Cents ($118,000.00) (the "Settlement Amount") in consideration for the promises made herein, and in full and final settlement of the Action, including the reasonable amount of attorneys' fees and costs incurred by Plaintiffs in this Action that Plaintiffs have asserted or may assert against Defendants as of the Effective Date which arise out of Plaintiffs' alleged employment by, or relationship with, Defendants.

a. **Plaintiffs Responsibility for Apportionment:** The Plaintiffs acknowledge and agree that they are solely responsible for determining and effectuating the apportionment or allocation of the Settlement Agreement among themselves. The Defendants shall have no responsibility, obligation, or liability whatsoever with respect to any dispute or arrangements regarding the division or distribution of the Settlement Agreement installments or amount among the Plaintiffs.

b. **Installment Payments:** The Settlement Amount will be paid in installments as detailed below. The due date of each installment is the 23rd of each month or, in the event that the 23rd of a given month falls on a weekend or federal holiday, the payment shall be due on the next business day thereafter (the "Due Date").

| | |
|---|---|
| 6/23/2025 | $ 5,000.00 |
| 7/23/2025 | $ 5,000.00 |
| 8/23/2025 | $ 5,000.00 |
| 9/23/2025 | $ 5,000.00 |
| 10/23/2025 | $ 5,000.00 |
| 11/23/2025 | $ 5,000.00 |
| 12/23/2025 | $ 5,000.00 |
| 1/23/2026 | $ 7,500.00 |
| 2/23/2026 | $ 7,500.00 |
| 3/23/2026 | $ 7,500.00 |
| 4/23/2026 | $ 10,000.00 |

Doc ID: 36d721218a0ddf5659d8bc8a76b5a99fa56dd58c

| | |
|---|---|
| 5/23/2026 | $ 10,000.00 |
| 6/23/2026 | $ 12,500.00 |
| 7/23/2026 | $ 12,500.00 |
| 8/23/2026 | $ 15,500.00 |

c. The checks for the Settlement Amount shall be delivered to Brian J. Militzok, Esq., Militzok & Associates, P.A., 1250 S. Pine Island Road, Suite 225, Plantation, FL 33324.

d. **Defendants' Liability:** The Defendants acknowledges and agrees that they shall be individually and severally liable for the full payment of the Settlement amount, and its installments as detailed in Paragraph (3) Section (b), including any additional liquidated damages, fees, or costs in the event of a breach of this Agreement, as defined in this Agreement.

e. **Cure Period:** In the event the Defendants fail to timely pay any installment payment required under this Agreement, and after Plaintiffs provide written notification of the nonpayment to Defendants' counsel, via e-mail, the Defendants shall have ten (10) days to cure the deficiency without being in breach of this Agreement.

f. **Breach:** In the event that Defendants fail to make a payment on an applicable due date, Plaintiff shall give notice to Defendants, as set forth in Paragraph 3(e) "Cure Period" and the Notice Section, below at Paragraph 13, that Defendants have failed to make a payment. If Payment is made consistent with the timeframes set forth in the Cure Period (as described in Paragraph 3(e) then Defendants shall not be in default and no breach of this agreement will have occurred. However, as a condition precedent to bringing any claim for breach, Plaintiffs shall be required to provide notice of a failed payment and provide ten (10) days to cure the payment. Notice may be delivered during or after the Cure Period. In the event of a breach of this Agreement by Defendants, and no cure by Defendants within ten (10) days following Plaintiff's notice then the Plaintiffs shall be entitled to an ex-parte judgment against Defendant in the amount of One Hundred and Forty Five Thousand Dollars, less any payments already made by Defendants and received by Plaintiffs.

g. **Tax Responsibilities:** Plaintiffs agree, warrant, and acknowledge that Defendants shall have no responsibility whatsoever for the payment of any taxes for which Plaintiffs are liable with respect to payments of the Settlement Amount.  More specifically, Plaintiffs agree and acknowledge that, should any payments of the Settlement Amount be subject to any additional federal or state taxes (excluding the employer's lawful share of taxes and withholdings) (the "Additional Taxes"), Plaintiffs shall bear the sole and exclusive responsibility for paying the Additional Taxes, as well as any interest and penalties imposed thereon by the Internal Revenue Service, and agree to indemnify and hold

Doc ID: 36d721218a0ddf5659d8bc8a76b5a99fa56dd58c

harmless Defendants to the extent that the Internal Revenue Service seeks to recover the Additional Taxes, as well as any interest and penalties imposed thereon by the Internal Revenue Service. Defendants, however, shall be responsible for submitting the funds withheld from the paychecks, if any as proscribed by Paragraph 3(a) above, to the appropriate taxing authorities.

h. <u>Plaintiffs' General Release and Waiver of Claims</u>. In exchange for the consideration provided by Defendants in this Agreement, Plaintiffs (each individually) and Plaintiffs' heirs, executors, representatives, administrators, agents, insurers, and assigns (collectively, the "Plaintiffs' Releasors") irrevocably and unconditionally fully and forever waive, release, and discharge Defendants, including their parents, subsidiaries, affiliates, predecessors, successors, joint employers, and assigns, and each of their respective agents, officers, directors, employees, members, managers and agents, in their corporate and individual capacities (collectively, the "Defendants' Releasees"), from any and all claims, demands, actions, complaints, judgments, rights, fees, damages, debts, obligations, liabilities, and expenses (inclusive of attorneys' fees and costs) of any kind whatsoever, whether known or unknown (collectively, "Plaintiffs' Claims"), that Plaintiffs' Releasors may have or have ever had against the Defendants' Releasees, or any of them, arising out of, or in any way related to Plaintiffs' hire, benefits, employment, termination, or separation from employment with Defendants by reason of any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter from the beginning of time up to and including the date of Plaintiffs' execution of this Agreement. Plaintiffs' general release of claims includes, without limitation:

    i.    any and all claims under Title VII of the Civil Rights Act of 1964 (Title VII), Pregnant Workers Fairness Act, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Fair Labor Standards Act (FLSA), the Equal Pay Act, the Employee Retirement Income Security Act (ERISA) (regarding unvested benefits), the Civil Rights Act of 1991, Section 1981 of U.S.C. Title 42, the Fair Credit Reporting Act (FCRA), the Worker Adjustment and Retraining Notification (WARN) Act, the National Labor Relations Act (NLRA), the Age Discrimination in Employment Act (ADEA), the Uniform Services Employment and Reemployment Rights Act (USERRA), the Genetic Information Nondiscrimination Act (GINA), the Immigration Reform and Control Act (IRCA), the Florida Civil Rights Act, the Florida Whistleblower Protection Act, Florida Workers' Compensation Law's Retaliation provision, the Florida Wage Discrimination Law, the Florida Minimum Wage Act, the Florida Equal Pay Law, the Florida Omnibus AIDS Act, the Florida Domestic Violence Leave Act, the Florida Discrimination on the Basis of Sickle Cell Trait Law, Florida OSHA, the Florida Constitution, the Florida Fair Housing Act, all employment-related and applicable city or county ordinances, including any amendments and their respective implementing regulations, and any other federal, state, local, or foreign law (statutory, regulatory, or otherwise) that may be legally waived and released; however, the identification of specific statutes is

4

Doc ID: 36d721218a0ddf5659d8bc8a76b5a99fa56dd58c

for purposes of example only, and the omission of any specific statute or law shall not limit the scope of this general release in any manner;

ii. any and all claims for compensation of any type whatsoever, including but not limited to claims for salary, wages, bonuses, commissions, incentive compensation, vacation, sick pay, or severance;

iii. any and all claims arising under tort, contract, or quasi-contract law, including but not limited to claims of breach of an express or implied contract, tortious interference with a contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, detrimental reliance, invasion of privacy, nonphysical injury, personal injury or sickness, or any other harm, wrongful or retaliatory discharge, fraud, defamation, false imprisonment, and negligent or intentional infliction of emotional distress; and

iv. any and all claims for monetary or equitable relief, including but not limited to attorneys' fees and costs, back pay, front pay, reinstatement, experts' fees, medical fees or expenses, costs and disbursements, punitive damages, liquidated damages, and penalties;

v. any indemnification rights that Plaintiffs have against Defendants; and

vi. all claims, including those of which Plaintiffs are not aware and those not specifically mentioned in this Agreement, regardless of whether such claims are known or unknown, asserted and unasserted, suspected or unsuspected, accrued or not yet accrued through the date of execution of this Agreement.

Plaintiffs' general release of claims against Defendants in this Paragraph 4 shall exclude, and Plaintiffs do not waive, release, or discharge any right to file an administrative charge or complaint with or testify, assist, or participate in an investigation, hearing, or proceeding conducted by the Equal Employment Opportunity Commission or other similar federal or state administrative agencies, although Plaintiffs waive any right to monetary relief related to any filed charge or administrative complaint; claims that cannot be waived by law, such as claims for unemployment benefit rights and workers' compensation; and any right to file an unfair labor practice charge under the National Labor Relations Act. However, Plaintiffs and Plaintiffs' Releasors hereby certify and affirm that there are no known, anticipated, or pending claims against Defendants or the Defendants' Releasees existing as of the Effective Date that may be excluded as set forth in this Paragraph.

i. <u>Defendants' General Release of Claims.</u> In exchange for the consideration provided by Plaintiffs in this Agreement, Defendants, including their parents, subsidiaries, affiliates, predecessors, successors, joint employers, and assigns, and each of its and their respective agents, officers, directors, employees, members, managers and agents, in their corporate and individual capacities (collectively, the "Defendants' Releasors")

5

Doc ID: 36d721218a0ddf5659d8bc8a76b5a99fa56dd58c

irrevocably and unconditionally fully and forever waive, release, and discharge Plaintiffs and Plaintiffs' heirs, executors, representatives, administrators, agents, insurers, and assigns (collectively, the "Plaintiffs' Releasees"), from any and all claims, demands, actions, causes of actions, judgments, rights, fees, damages, debts, obligations, liabilities, and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown (collectively, "Defendants' Claims"), that Defendants' Releasors may have or have ever had against the Plaintiffs' Releasees, or any of them, arising out of, or in any way related to Plaintiffs' hire, benefits, employment, termination, or separation from employment with Defendants by reason of any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter from the beginning of time up to and including the date of Plaintiffs execution of this Agreement. Defendants and the Defendants' Releasors hereby certify and affirm that there are no known anticipated or pending claims before any court, administrative agency, regulatory body, or tribunal of any manner that would be released under the terms of this Agreement.

5)    Non-Disparagement. Plaintiffs agree not to make any direct or indirect adverse, derogatory, or disparaging comments or statements (written, oral or by use of social media sites and similar communication tools) about or against Defendants or Defendants' Releasees, their officers, directors, employees, or clients. Plaintiffs further agree to remove such comments previously made, if any, from any public media (including written, oral or by use of social media sites and similar communication tools) on which they are posted. Defendants likewise agree not to make any direct or indirect adverse, derogatory, or disparaging comments or statements (written, oral or by use of social media sites and similar communication tools) about or against any Plaintiff.

6)    Confidentiality. Plaintiffs covenant that, at no time prior to the date of the signing of this Agreement, they have reviewed, discussed, or disclosed, orally or in writing, the existence of the Agreement, the negotiations and discussions leading to the Agreement, or any of its terms or conditions with any person, organization, or entity other than their significant other, spouse, attorney, or tax consultant. Plaintiffs agree that from the date of signing this Agreement onward, they will keep the existence of this Agreement, the negotiations and discussions leading to this Agreement, and the terms and conditions of this Agreement, strictly confidential and, except as may be required by law, will not review, discuss, or disclose, orally or in writing, the existence of this Agreement, the negotiations leading to this Agreement, or any of its terms or conditions with any persons, organization, or entity, other than the Parties' respective spouses, attorneys, or tax consultants, on the condition that disclosure by such persons shall be deemed a breach of this Agreement. If inquiries arise concerning Plaintiffs' dispute with Defendants or this Agreement by anyone other than those listed, Plaintiffs will simply state "the matter has been resolved" and will make no further comment. If Plaintiffs are required by law through subpoena or otherwise to disclose information described in this Agreement, they will immediately contact the Defendants' attorneys to inform Defendants' attorneys of that fact and to provide Defendants an opportunity to challenge the legal process which Plaintiffs believe would result in the disclosure of such information.

6

7) <u>Waiver of Future Employment.</u> Plaintiffs waive all rights to employment with Defendants, Defendants' Releasees, their subsidiaries, and affiliated companies. If Plaintiffs do apply for employment with Defendants, Defendants' Releasees, their subsidiaries, or any of their affiliated companies, the Parties agree that Defendants, Defendants' Releasees, their subsidiaries and their affiliated companies need not employ them, and that if Defendants, Defendants' Releasees, their subsidiaries, and its affiliated companies decline to employ them, they shall not be liable to Plaintiffs for any cause or damages whatsoever.

8) <u>Neutral Reference</u>. Upon any inquiry from Plaintiffs' subsequent employer, or from any prospective employer with whom Plaintiffs have applied for employment, regarding Plaintiffs' prior employment or relationship with Defendants, Defendants will provide such inquiring employer with only the following information: (a) Plaintiffs' name; (b) Plaintiffs' initial date of work with Defendants; (c) Plaintiffs' last date of work with Defendants; and (d) Plaintiffs' pay rate.

9) <u>Cooperation of Parties.</u> The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents and to do all things reasonably necessary to complete and effectuate the settlement described in this Agreement.

10) <u>No Pending or Future Claims</u>. Plaintiffs represent that they have no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against Defendants with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board based upon events occurring prior to and including the Effective Date of this Agreement. Plaintiffs further represent and warrant that they have no knowledge of, and did not witness, any acts of discrimination, retaliation, or any other acts or omissions in violation of law by Defendants against any other current or former employee or independent contractor of Defendants, unless such acts have been disclosed by Plaintiffs in a signed writing to Defendants' attorneys prior to the Effective Date, and with sufficient detail so as to allow Defendants to conduct its own independent investigation of the alleged acts.

11) <u>Incitement of Claims.</u>  Plaintiffs agree that Plaintiffs will not encourage or incite any person including, but not limited to, other current or former employees or independent contractors of Defendants to disparage or assert any complaint or claim with any agency or in federal or state court against Defendants.  Plaintiffs acknowledge that any incitement of others to file such claims may constitute a material breach of this Agreement by a court of competent jurisdiction. Plaintiffs further warrant and represent that except for the individuals currently represented by Plaintiffs' counsel which have been privately disclosed by email to Defendants' counsel, Plaintiffs are unaware of any other person who may have a claim or cause of action against Defendants for any reason.

12) <u>No Construction Against Drafter.</u> This Agreement was drafted jointly by the Parties and in construing and interpreting this Agreement, no provision of the Agreement shall be construed or interpreted against any Party based upon the contention that this Agreement or a portion of it was purportedly drafted or prepared by that Party.

Doc ID: 36d721218a0ddf5659d8bc8a76b5a99fa56dd58c

13) <u>Notices.</u> Unless stated otherwise herein, any notice required or provided for under this Agreement shall be in writing and sent by electronic mail and by Certified Mail, return receipt requested, as follows:

<u>As to Plaintiffs:</u>

Brian Militzok, Esq.
Florida Bar No. 0069993
Militzok Law, P.A
8958 W. State Road 84, #1036,
Fort Lauderdale, FL 33324
bjm@militzoklaw.com

<u>As to Defendants:</u>

Jesse Unruh, Esq.
Spire Law, PLLC
2572 W. State Rd 426, Suite 2088
Oviedo, FL 32765
jesse@spirelawfirm.com
filings@spirelawfirm.com

Mylissa Graber
1425 S. Congress Ave.
Delray Beach, FL 33445
<u>drgraber@drgsurgentcare.com</u>

14) <u>Evidentiary Preclusion.</u> To support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, the Released Parties may file this Agreement.

15) <u>Binding Nature of Agreement</u>. This Agreement shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, assigns and successors and shall inure to the benefit of each party and their respective heirs, administrators, representatives, executors, successors, and assigns.

16) <u>Headings.</u> The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

17) <u>Applicable Law and Venue</u>. This Agreement shall be governed by the laws of the State of Florida and any applicable federal law. Jurisdiction for enforcement, prosecution and venue shall lie exclusively in federal or state courts located in the State of Florida with jurisdiction over matters occurring in Broward, Florida.

18) <u>Attorneys' Fees for Enforcement.</u> Should any Party be required to bring a legal action in order to enforce the terms of this Agreement, including the terms of its release provision, the prevailing party in such action shall be entitled to receive its attorney's fees and costs incurred in bringing and maintaining such action.

19) <u>Signatures in Counterparts.</u> This Agreement may be executed in counterparts, each of which shall be taken to be one and the same instrument, as if all Parties had executed the

8

same signature page. A fax or scanned e-mail copy of any party's signature shall be deemed as legally binding as an original signature.

20) <u>Modification of Agreement</u>. This Agreement may not be amended, revoked, changed, or modified in any manner, except upon a written agreement executed by all Parties. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the party against whom such waiver is charged.

21) <u>Entire Agreement.</u> This Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements or understandings between them pertaining to the settlement.

22) <u>Effective Date.</u> This Agreement shall be effective on the date that the last Party executes this Agreement (the "Effective Date").

23) <u>Independent Investigation; Receipt of Advice of Counsel.</u> The Parties understand and acknowledge that they: (i) have performed an independent investigation of the allegations of fact and law made in connection with the Action; and (ii) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. It is the Parties' intention to resolve their disputes in connection with the Action pursuant to the terms of this Agreement now and therefore, in furtherance of their intentions, this Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in any substantive or procedural law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law or changes in any substantive or procedural law, subsequently occurring or otherwise.

**EACH PARTY ACKNOWLEDGES, AGREES, AND SPECIFICALLY WARRANTS THAT THEY HAVE FULLY READ THIS AGREEMENT, HAVE RECEIVED INDEPENDENT LEGAL ADVICE REGARDING THE ADVISABILITY AND LEGAL EFFECTS OF ENTERING INTO IT, AND FULLY UNDERSTAND ITS TERMS AND CONSEQUENCES. EACH PARTY FURTHER WARRANTS THAT THEY ARE ACTING UPON THEIR OWN INDEPENDENT JUDGMENT AND THE ADVICE OF THEIR OWN COUNSEL, AND NOT IN RELIANCE ON ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, BY ANY OTHER PARTY, EXCEPT AS EXPRESSLY SET FORTH HEREIN. EACH PARTY ALSO ACKNOWLEDGES THAT THEY HAVE BEEN ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT, HAVE BEEN GIVEN TWENTY-ONE (21) DAYS TO CONSIDER ITS TERMS, UNDERSTAND THAT THEY MAY REVOKE THEIR ACCEPTANCE WITHIN SEVEN (7) CALENDAR DAYS AFTER SIGNING BY DELIVERING WRITTEN NOTICE OF REVOCATION TO THE OTHER PARTY, AND AGREE THAT THE AGREEMENT SHALL NOT BECOME EFFECTIVE OR ENFORCEABLE UNTIL THE SEVEN-DAY REVOCATION PERIOD HAS**

Doc ID: 36d721218a0ddf5659d8bc8a76b5a99fa56dd58c

**EXPIRED WITHOUT REVOCATION. EACH PARTY FURTHER UNDERSTANDS THAT THEY ARE WAIVING ONLY THOSE CLAIMS THAT MAY HAVE ARISEN UP TO THE DATE OF SIGNING AND ARE NOT WAIVING ANY CLAIMS THAT MAY ARISE THEREAFTER.**

**IN WITNESS WHEREOF**, the undersigned have hereunto caused the foregoing Agreement to be signed as follows:

**PLAINTIFFS:**

_____
**Steffi Fiallos**

Date: _____

_____
**Juan Bedoya**

Date: _____

_____
**Tamara Chin**

Date: _____

_____
**Shalan Blair**

Date: _____

_____
**Roslyn Achmad**

Date: _____

**DEFENDANTS:**

**Dr. G's Urgent Care LLC**

By: _____

Name: Dr. G's Urgent Care L _____

Its: CEO _____

Date: 06 / 18 / 2025 _____

**Mylissa Graber**

By: _____

Name: Dr. G's Urgent Care L _____

Its: _____

Date: 06 / 18 / 2025 _____

10

Doc ID: 36d721218a0ddf5659d8bc8a76b5a99fa56dd58c

EXPIRED WITHOUT REVOCATION. EACH PARTY FURTHER UNDERSTANDS THAT THEY ARE WAIVING ONLY THOSE CLAIMS THAT MAY HAVE ARISEN UP TO THE DATE OF SIGNING AND ARE NOT WAIVING ANY CLAIMS THAT MAY ARISE THEREAFTER.

IN WITNESS WHEREOF, the undersigned have hereunto caused the foregoing Agreement to be signed as follows:

PLAINTIFFS:

DEFENDANTS:

_____

**Steffi Fiallos**

Date: _____

**Dr. G's Urgent Care LLC**

By: _____

Name: Dr. G's Urgent Care L

Its: CEO

Date: 06 / 18 / 2025

_____

**Juan Bedoya**

Date: 06/19/2025

**Mylissa Graber**

By: _____

Name: Dr. G's Urgent Care L

Its: _____

_____

**Tamara Chin**

Date: _____

Date: 06 / 18 / 2025

_____

**Shalan Blair**

Date: _____

_____

**Roslyn Achmad**

Date: _____

10

Doc ID: 36d721218a0ddf5659d8bc8a76b5a99fa56dd58c

**EXPIRED WITHOUT REVOCATION. EACH PARTY FURTHER UNDERSTANDS THAT THEY ARE WAIVING ONLY THOSE CLAIMS THAT MAY HAVE ARISEN UP TO THE DATE OF SIGNING AND ARE NOT WAIVING ANY CLAIMS THAT MAY ARISE THEREAFTER.**

**IN WITNESS WHEREOF**, the undersigned have hereunto caused the foregoing Agreement to be signed as follows:

**PLAINTIFFS:**

_____
**Steffi Fiallos**

Date: _____

_____
**Juan Bedoya**

Date: _____

_____
**Tamara Chin**

Date: 6/20/25

_____
**Shalan Blair**

Date: _____

_____
**Roslyn Achmad**

Date: _____

**DEFENDANTS:**

**Dr. G's Urgent Care LLC**

By: _____

Name: Dr. G's Urgent Care L
_____

Its: CEO _____

Date: 06 / 18 / 2025

**Mylissa Graber**

By: _____

Name: Dr. G's Urgent Care L
_____

Its: _____

Date: 06 / 18 / 2025

**EXPIRED WITHOUT REVOCATION. EACH PARTY FURTHER UNDERSTANDS THAT THEY ARE WAIVING ONLY THOSE CLAIMS THAT MAY HAVE ARISEN UP TO THE DATE OF SIGNING AND ARE NOT WAIVING ANY CLAIMS THAT MAY ARISE THEREAFTER.**

**IN WITNESS WHEREOF**, the undersigned have hereunto caused the foregoing Agreement to be signed as follows:

**PLAINTIFFS:**

_____
**Steffi Fiallos**

Date: _____

_____
**Juan Bedoya**

Date: _____

_____
**Tamara Chin**

Date: _____

_____
**Shalan Blair**

Date: _____06/18/2025_____

_____
**Roslyn Achmad**

Date: _____

**DEFENDANTS:**

**Dr. G's Urgent Care LLC**

By: _____

Name: __Dr. G's Urgent Care L_____

Its: __CEO_____

Date: ___06 / 18 / 2025_____

**Mylissa Graber**

By: _____

Name: __Dr. G's Urgent Care L_____

Its: _____

Date: ___06 / 18 / 2025_____

10

Doc ID: 36d721218a0ddf5659d8bc8a76b5a99fa56dd58c

EXPIRED WITHOUT REVOCATION. EACH PARTY FURTHER UNDERSTANDS THAT THEY ARE WAIVING ONLY THOSE CLAIMS THAT MAY HAVE ARISEN UP TO THE DATE OF SIGNING AND ARE NOT WAIVING ANY CLAIMS THAT MAY ARISE THEREAFTER.

IN WITNESS WHEREOF, the undersigned have hereunto caused the foregoing Agreement to be signed as follows:

**PLAINTIFFS:**

_____
**Steffi Fiallos**

Date: _____

_____
**Juan Bedoya**

Date: _____

_____
**Tamara Chin**

Date: _____

_____
**Shalan Blair**

Date: _____

_____
**Roslyn Achmad**

Date: 6/18/2025

**DEFENDANTS:**

**Dr. G's Urgent Care LLC**

By: _____

Name: Dr. G's Urgent Care L _____

Its: CEO _____

Date: 06 / 18 / 2025 _____

**Mylissa Graber**

By: _____

Name: Dr. G's Urgent Care L _____

Its: _____

Date: 06 / 18 / 2025 _____

10

**Rachel Panosian**

Date: 6/19/2025

**Leonardo Laina**

Date: _____

**Nathalie Vachon**

Date: _____

**Susan Dash**

Date: _____

11

Doc ID: 36d721218a0ddf5659d8bc8a76b5a99fa56dd58c

_____

**Rachel Panosian**

Date: _____

_____

**Leonardo Laina**

Date: ____6/18/25_____

_____

**Nathalie Vachon**

Date: _____

_____

**Susan Dash**

Date: _____

11

_____

**Rachel Panosian**

Date: _____

_____

**Leonardo Laina**

Date: _____

*Nathalie Vachon*
**Nathalie Vachon**

Date: 6/19/2025 _____

_____

**Susan Dash**

Date: _____

11

**Rachel Panosian**

Date: _____

**Leonardo Laina**

Date: _____

**Nathalie Vachon**

Date: _____

**Susan Dash**

Date: _____ 06 \19 \25 _____

11

Doc ID: 36d721218a0ddf5659d8bc8a76b5a99fa56dd58c